FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 13, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HEATHER G.,[1]

                    Plaintiff,

        v.

MARTIN O'MALLEY, Commissioner of
Social Security,[2]

                    Defendant.

No.    2:23-cv-00297-EFS

**ORDER AFFIRMING THE ALJ'S
DENIAL OF BENEFITS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted for Kilolo Kijakazi as the defendant in this suit.

Due to degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, post-traumatic stress disorder, hepatitis, a right-hand injury, and alcohol and marijuana abuse, Plaintiff Heather G. claims that she is unable to work fulltime and applied for supplemental security income benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of Steven Golub, MD, and Joyce Everhart, PhD; failed to consider whether Plaintiff's condition equaled listing 1.15; and improperly assessed Plaintiff's credibility. As is explained below, Plaintiff has not established any consequential error.  The ALJ's denial of benefits is affirmed.

## I.    Background

In March 2019, Plaintiff filed an application for benefits under Title 16, claiming disability beginning January 1, 2018, based on the physical and mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Lori Freund held a telephone hearing in July 2022, at which Plaintiff appeared with her representative.[5] Plaintiff, a medical expert, and a vocational expert testified.[6]

---

[3] AR 321-335, 356.

[4] AR 133, 145.

[5] AR 60-93.

[6] *Id.*

After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[8] As to medical opinions, the ALJ found:

- The opinions of medical expert Steven Golub, MD, with the exception of his opinion regarding fine finger manipulation, to be persuasive.

- The opinions of medical expert Steven Golub, MD, regarding fine finger manipulation to be not persuasive.

- The opinions of Shana Colt, PA-C, to be neither persuasive nor probative because they did not relate to the relevant period.

- The opinions of consultative examiner Joyce Everhart, PhD, that Plaintiff suffered from unspecified anxiety disorder, unspecified depressive disorder, and PTSD to be persuasive.[9]

- The opinions of state agency evaluators Dan Donahue, PhD; Debra Baylor, MD; Carla Van Dam, PhD; and Jay Shaw, MD, to be generally persuasive.[10]

---

[7] AR 31-53.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 40-46.

[9] The parties concede that the ALJ did not find the other findings in Dr. Everhardt's consultative examination report to constitute a "medical opinion."

[10] AR 43-46.

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 26, 2019, the date of her application.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, unspecified depressive disorder, unspecified anxiety disorder, and post-traumatic stress disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and the ALJ specifically considered Listings 1.15, 1.16, 12.04, 12.05, and 12.15.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  > [Plaintiff] can lift up to twenty pounds occasionally and lift and carry up to ten pounds frequently.  She can stand and walk for up to six hours in an eight-hour workday.  She can sit for at least six hours in an eight-hour workday.  She can never climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs.  She can occasionally stoop, kneel, crouch, and crawl.  She must avoid all exposure to unprotected heights, extreme cold, and excessive vibration. She is limited to simple and repetitive tasks with occasional changes in the work setting.  She can have occasional interaction with the general public and coworkers.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as a housekeeper (DOT 323.687-014), outside deliverer (DOT 230.663-010), and mailing clerk (DOT 209.587-034).[11]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[12]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[13] and such error impacted the nondisability determination.[14] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]

---

[11] AR 36-47.

[12] AR 315.

[13] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[14] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[15] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that

### III.    Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred when evaluating the medical opinions and when evaluating Plaintiff's subjective complaints and in failing to properly consider whether she equaled a listing.[16]  As is explained below, the Court concludes that Plaintiff fails to establish the ALJ  erred in her evaluation of the medical opinion evidence, the listings, or Plaintiff's symptom reports.

### A.    Medical Opinion: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[17] Specifically, Plaintiff first argues that the ALJ erred in finding the opinions of medical advisor Stephen Golub, MD, to be persuasive because he did not consider

---

supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[16] Plaintiff also avers that the first two errors resulted in an improper determination at step five.

[17] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

the record in its entirety and did not see evidence that Plaintiff had a positive

straight leg raising.  Plaintiff also argues that the ALJ erred in failing to consider

the opinions of Joyce Everhart, PhD, regarding Plaintiff's physical limitations.

      1.   Standard

The ALJ was required to consider and evaluate the persuasiveness of the

medical opinions and prior administrative medical findings.[18] The factors for

evaluating the persuasiveness of medical opinions and prior administrative

medical findings include, but are not limited to, supportability, consistency,

relationship with the claimant, and specialization.[19] Supportability and consistency

are the most important factors,[20] and the ALJ must explain how she considered the

supportability and consistency factors when reviewing the medical opinions and

support her explanation with substantial evidence.[21] The ALJ may consider, but is

not required to discuss the following additional factors: the source's relationship to

Plaintiff such as length of the treatment, purpose of the treatment relation and

---

[18] 20 C.F.R. § 416.920c(a), (b).

[19] 20 C.F.R. § 416.920c(c)(1)–(5).

[20] *Id.* § 416.920c(b)(2).

[21] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must

articulate . . . how persuasive it finds all of the medical opinions from each doctor

or other source and explain how it considered the supportability and consistency

factors in reaching these findings.") (cleaned up).

whether the source examined Plaintiff, as well as whether the source had advanced

training or experience to specialize in the area of medicine in which the opinion

was being given.[22] When considering the ALJ's findings, the Court is constrained to

the reasons and supporting explanation offered by the ALJ.[23]  An ALJ is not

required to articulate how they considered evidence from nonmedical sources using

the requirements in paragraphs (a) through (c).[24]

        2.      Dr. Steven Golub's Testimony

         On July 27, 2022, Steven Golub, MD, appeared by telephone and testified

before ALJ Lori Freund as a medical expert.[25] Dr. Golub testified that his resume

accurately reflected his background and that he understood that he was to testify

as an impartial expert.[26] Dr. Golub stated that he reviewed the exhibits through

Exhibit 24F.[27] Dr. Golub stated that he had enough information to give a medical

opinion as to severe impairments. Dr. Golub stated that Plaintiff has a history of

substance abuse, including meth; the use of unprescribed opiates for chronic low

---

[22] *Id.*

[23] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court

review is constrained to the reasons the ALJ gave).

[24] 20 C.F.R. § 416.920c(d)

[25] AR 60-93.

[26] AR 66-67.

[27] AR 68.

back pain; a herniated disc at L4/5 with mild nerve root impingement and prescribed treatment of epidural steroid injections which he was unsure she received.[28] He stated that he reviewed notes at Exhibits 18F, 19F and 20F, regarding musculoskeletal symptoms; an x-ray of the spine taken in August 2020, which was negative and a physical examination which was within normal limits; and a treatment note from October 2020 which noted chronic low back pain but stated that Plaintiff had been noncompliant with suggestions to attend physical therapy.[29] Dr. Golub noted that in October 2021 Plaintiff was followed-up for chronic back pain but was using alcohol and that the physical examination was negative with regard to any focal, neurologic abnormalities.[30] Dr. Golub noted treatment for a dog bite in July 2021 and that Plaintiff was noted to have elevated liver enzymes and possibly suffering from hepatitis as a result of excessive Tylenol use.[31] Dr. Golub also noted that Plaintiff had surgical procedures in November 2018 and July 2018.[32]

---

[28] *Id.*

[29] AR 68-69.

[30] AR 69.

[31] *Id.*

[32] *Id.*

Dr. Golub testified that none of Plaintiff's conditions met or equaled a medical listing.[33] Dr. Golub opined that Plaintiff would have the following work limitations: she could lift and carry 10 pounds frequently and 20 pounds occasionally in an eight-hour day; could sit for six hours and stand and walk for a total of six hours; could perform manipulative activities with her shoulders and hands frequently; could stoop, crawl, kneel, and climb stairs occasionally; should avoid exposure to unprotected heights; should avoid exposure to extreme cold; and should avoid exposure to vibration in the lower extremities.[34] Dr. Golub also said that he did not find any need for a cane or assistance device.[35] Dr. Golub opined that those limitations would have been in place since January 1, 2018.

Dr. Golub stated that Plaintiff's back injury could produce some degree of pain.[36] Dr. Golub stated that he focused on objective evidence.[37] Plaintiff's attorney asked whether straight leg raising could indicate nerve root impingement and Dr. Golub stated that it could but that in this case the examination did not show any findings that corroborated significant nerve root compression.[38] Dr. Golub

---

[33] *Id.*

[34] AR 69-70.

[35] AR 70.

[36] AR 70-71.

[37] AR 71.

[38] *Id.*

1  explained that clinically there was no pain distribution consistent with the site of

2  impingement and that there had been multiple examinations within normal

3  limits.[39] Plaintiff's counsel again asked if straight leg raising, numbness, tingling,

4  lack of sensation or strength in the lower extremities would be neurological

5  findings.[40] Dr. Golub said they could be but stated that if there was a significant

6  nerve root compression you would see neuromuscular findings to support

7  compression and there were none in the record.[41] When asked if he prescribed

8  medications in his practice, Dr. Golub said he did.[42] When asked if muscle relaxers

9  and Gabapentin were used to treat muscle cramping and nerve cramping, Dr.

10  Golub said that they were among the medications used.[43]

11      3.    <u>Relevant Medical Records</u>

12          a.    <u>*Maple Street Clinic*</u>

13  On October 22, 2021, Plaintiff presented to ARNP Alexis Houser of the

14  Maple Street Clinic.[44] On examination, Plaintiff had normal muscle tone and

15  strength; she had no contractures, misalignment, or bone abnormalities; she had

---

17  [39] *Id.*

18  [40] *Id.*

19  [41] *Id.*

20  [42] AR 72.

21  [43] *Id.*

22  [44] AR 989.

DISPOSITIVE ORDER - 11

1    tenderness to palpation of the left-side lumbar spine and reduced range of motion

2    due to pain; she had a positive seated straight leg raising on the left; she had

3    normal and equal Achilles and patellar deep tendon reflexes; sensation was intact

4    bilaterally in the lower extremities; and there was no cyanosis, edema or

5    varicosities in the lower extremities.[45]

6          b.    _Joyce Everhart, PhD_

7          On June 17, 2019, Joyce Everhart, PhD, examined Plaintiff at the request of

8    the Commissioner.[46]  On examination, Plaintiff had good long-term memory, was

9    able to recall the presidents and surrounding states and could remember three of

10   three objects, could do serial sevens, and could spell world forward and backward.[47]

11   She understand proverbs and similarities.[48]  Plaintiff was able to complete

12   Trailmaking Part A and B with no errors.[49]

13         Dr. Everhart assessed Plaintiff with Unspecified Anxiety Disorder,

14   Unspecified Depressive Disorder, and Posttraumatic Stress Disorder and deferred

15

16

17   _____

18   [45] AR 993.

19   [46] AR 852-858.

20   [47] AR 855.

21   [48] _Id._

22   [49] AR 856.

23

opinions regarding physical medical conditions to a physical medicine specialist.[50] Dr. Everhart opined that Plaintiff's condition was guarded.[51]

Dr. Everhart noted that Plaintiff needed assistance to complete her activities of daily living  and had a caregiver who came twice a week.[52] She opined that Plaintiff presented as anxious and depressed; showed no difficulty with executive functioning; would be able to understand, remember, and carry out simple directions; had good eye contact; had normal speech; and showed no evidence of decompensation.[53]  She also noted that Plaintiff walked slowly with a somewhat impaired gait and station and showed pain, but again deferred any opinion regarding physical condition to a physical medicine specialist.[54]

4.    Analysis

a.    _The ALJ's consideration of the opinions of Steven Golub, MD_

Plaintiff argues that the ALJ erred in relying upon Dr. Golub's testimony because he mischaracterized the medical evidence by:  failing to consider Plaintiff's subjective pain, overlooking positive straight leg raising, incorrectly stating that Plaintiff was noncompliant with physical therapy, failing to recognize that Plaintiff

---

[50] _Id._

[51] _Id._

[52] AR 857.

[53] _Id._

[54] _Id._

1  had epidural injections, and incorrectly claiming that the record lacked

2  neuromuscular findings that would support significant compression.[55] Plaintiff

3  argues that Dr. Golub says the last medical note he saw was from July 2021, and

4  that he thus did not review the most crucial evidence—a straight leg raising test

5  performed in October 2021.[56]

6      As an initial matter, the specific page reference given by Plaintiff in support

7  of her contention that Dr. Golub did not review the October 2021 medical note

8  disproves rather than proves her assertion.  Dr. Golub specifically noted the

9  October 2021 visit in his testimony.  Dr. Golub testified:

> In October 21, at 22F, claimant was followed up for low back pain.  At
> that point in time the claimant had been using a significant amount of
> alcohol.  The [physical examination] was negative with regard to any
> focal, neurologic abnormalities and let's see.  In 23F claimant was
> presented with a dog bite.  The work up and evaluation was negative.
> Clamant was provided a splint on the right hand that was bitten and
> lastly in July 21—that is the last note I saw.[57]

Notably, the medical records located at 22F are those of Maple Street

Clinic.[58]  The medical records located at 23F are those of Deaconess Hospital

Emergency Room.[59] The fact that the medical records from Deaconess Hospital

_____

[55] ECF No. 9.

[56] *Id.*

[57] AR 69.

[58] AR 989-1011.

[59] AR 1012-1118.

were admitted to the record after those of the Maple Street Clinic has no bearing

on whether Dr. Golub reviewed the treatment record of October 2021.  He did

review that record and properly identified it as being contained in Exhibit 22F.

Moreover, in his testimony Dr. Golub specifically addressed the straight leg raising

test that Plaintiff asserts he did not consider.

Plaintiff's attorney questioned Dr. Golub about the straight leg raising test

and asked if the test, in conjunction with the MRI would be reasonably expected to

cause severe pain.[60]  Dr. Golub replied:

> Well, again, it could.  Certainly, with the finding it is certainly possible.
> The issue here is that clinically on examination claimant did not have
> any significant findings that would indicate significant nerve root
> compression disease. Meaning there is no distribution pain consistent
> with the site of impingement (sic) and clinically there was more than
> one examination reported to be essentially within normal limits.[61]

Dr. Golub addressed the straight leg raising test directly and testified that

even after considering that fact, he did not find that it supported a higher degree of

impairment because the associated findings were not consistent with a severe

nerve root compression in the area indicated.  Specifically, Dr. Golub clarified that

the neuromuscular findings were all normal.  Dr. Golub did not mischaracterize

the findings as Plaintiff asserts.  On examination, Plaintiff had normal muscle tone

and strength; she had no contractures, misalignment or bone abnormalities; she

had tenderness to palpation of the left-side lumbar spine and reduced range of

---

[60] AR 71.

[61] AR 71.

motion due to pain; she had a positive seated straight leg raising on the left; she had normal and equal Achilles and patellar deep tendon reflexes; sensation was intact bilaterally in the lower extremities; and there was no cyanosis, edema or varicosities in the lower extremities.[62]

Dr. Golub testified that the distribution of pain was not consistent with the allegations of pain.  Plaintiff argues that this was incorrect using only the non-expert assertions of her attorney.  Neither Plaintiff's attorney nor the ALJ have medical training which would qualify them to interpret the raw data on their own.  No other acceptable medical source has controverted Dr. Golub's opinions and findings and it would have been inappropriate for the ALJ to attempt to interpret the complex medical data on her own.[63]

Plaintiff's remaining two claims are inconsequential at best.  Plaintiff's assertion that Dr. Golub incorrectly stated that Plaintiff did not have epidural injections is also incorrect.  Dr. Golub stated that the record indicated that Plaintiff was prescribed epidural injections but he was not sure if she received them.[64] There is no indication that Dr. Golub considered the injections unnecessary or that

---

[62] AR 993.

[63] ALJs cannot usurp the role of doctors when interpreting medical evidence, particularly highly technical medical evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017).

[64] AR 68.

1    he faulted Plaintiff for noncompliance, instead he acknowledged that Plaintiff's

2    medical sources had prescribed them but stated that the record was unclear if and

3    when they were administered.

4        Lastly, Plaintiff asserts that Dr. Golub unfairly characterized her as

5    noncompliant with physical therapy because she could not attend appointments

6    during the Covid-19 pandemic, but the record indicates that her failure to attend

7    appointments pre-dated the pandemic.[65]

8        The Court thus concludes that Plaintiff failed to establish consequential

9    error in the ALJ's consideration of Dr. Golub's testimony.

10        *b.    The ALJ's consideration of Joyce Everhart, PhD's Statements*

11        Plaintiff argues that the ALJ erred in her finding that Dr. Everhart's report

12    was not a medical opinion as it related to her physical limitations and offers three

13    cases in support of her assertion.[66]  Plaintiff is incorrect in her assertion.

14        A medical opinion is a statement from a medical source about what an

15    individual can still do despite her impairments, and whether the individual has

16    one or more impairment-related limitations and restrictions.[67]

17        An acceptable medical source is a licensed physician; a licensed psychologist,

18    opining as to mental impairments, intellectual disability, learning disability, or

19

20    _____

21    [65] AR 960.

22    [66] ECF No. 11.

23    [67] 20 C.F.R. § 416.913.

DISPOSITIVE ORDER - 17

borderline intellectual functioning; an optometrist opining as to visual disorders; a podiatrist opining as to impairments of the foot and ankle; a speech pathologist opining as to speech and language impairments; an audiologist opining as to hearing loss, auditory processing disorders and balance disorders; an advanced practice registered nurse opining as to impairments within their licensed scope of practice; and a licensed physician's assistant opining as to impairments within their licensed scope of practice.[68]

There is no question that with regard to physical impairments, Dr. Everhart was not an acceptable medical source.  Despite the repeated references to Dr. Everhart as a physician in Plaintiff's brief and reply brief, she is not a physician.  The regulations are clear that an MD or an OD are not limited in the scope of medical conditions for which they can offer an opinion. All other medical sources are limited to the ability to render an opinion only to those conditions within the scope of their specific license.  As a psychologist, Dr. Everhart was limited to rendering an opinion only with regard to mental impairments and not physical impairments.[69] Dr. Everhart was aware of that fact and twice deferred to a physical medical specialist regarding physical impairments.[70]

---

[68] 20 C.F.R. § 416.902.

[69] *Id*.

[70] AR 856, 857.

The three cases which Plaintiff referenced are inapposite and tend to disprove rather than support her assertion.  Each case involves consideration of the opinions of a licensed medical doctor, not the opinion of a psychologist. *Carr v. Sullivan*, 772 F. Supp. 522 (E.D. Wash. 1991), and *Beecher v. Heckler*, 756 F.2d 693, 695 (9th Cir. 1985), addressed whether a psychiatrist properly opined as to both physical and mental impairments.  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), addressed the issue of whether a general practice physician was qualified to testify regarding psychiatric issues.

To the extent that Dr. Everhart opined as to physical and not mental conditions, those opinions were those of a nonmedical source and the ALJ was not obliged to articulate her consideration of them.[71] Thus, the Court concludes that the ALJ did not err in her consideration of Dr. Everhart's statements regarding physical impairments.

---

[71] 20 C.F.R. § 416.920c

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    5.   Summary

Because the ALJ committed no error in her consideration of the opinions of Dr. Golub and the statements of Dr. Everhart, the Court finds that no consequential error occurred and a remand is not warranted.

**B.    Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ failed to provide substantial evidence to support the finding that Plaintiff did not equal Listing 1.15A.[72] The Court disagrees.

If a claimant meets all of the listing criteria or if her impairments medically equal a listed impairment, she is considered disabled.[73] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[74] "[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."[75]  Pursuant to the applicable

---

[72] ECF No. 9, 11.  Plaintiff concedes that she does not meet the listing.

[73] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[74]  20 C.F.R. § 416.926; *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

[75] *Marcia*, 900 F.2d at 176; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (The ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

regulations, an ALJ may find that a plaintiff meets a listing without a medical opinion supporting that finding, but cannot make a determination that a plaintiff equals a listing unless that finding is supported by a medical opinion of record from an acceptable medical source that the plaintiff's impairment medically equals the listing.[76]

The ALJ in this matter articulated that there was no medical opinion in the record stating that Plaintiff equaled Listing 1.15 and that when asked if Plaintiff equaled that specific listing, Dr. Golub testified that she did not equal the listing. Thus, the ALJ had no authority to find that Plaintiff equaled Listing 1.15.

To the extent that Plaintiff is asking the Court to find the ALJ remiss for having not taken an action that she was not empowered to take, the Court finds the argument to be without merit.  Remand is not warranted.

**C.    Symptom Reports: Plaintiff fails to establish consequential error**

Plaintiff argues the ALJ failed to properly assess her subjective complaints regarding physical disability.  She argues that the ALJ gave a recitation of the medical facts and then made a conclusory statement that the record does not support Plaintiff's allegations of disability.

---

[76] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    <u>Standard</u>

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[77] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[78] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[79] "The clear and convincing standard is the most demanding required in Social Security cases."[80] Therefore, if an ALJ does not articulate specific, clear,

---

[77] *Molina*, 674 F.3d at 1112.

[78] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[79] *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[80] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[81]

     2.   <u>Plaintiff's Testimony</u>

On July 27, 2022, Plaintiff appeared with her attorney and testified before ALJ Lori Freund.[82] Plaintiff testified that she had not performed any work since her alleged onset date of January 1, 2018.[83] She said that she had last worked in 2010 as a housekeeper and did that position fulltime for a short time in which she earned only $1000.00 for the year.[84] She said that she was fired from the job and believes that it was for showing up late.[85] She did not seek work after being fired because she was pregnant.[86] Plaintiff said that since January 2018 she had not sought work because she was in AA and wanted to be clean and sober.[87] She said

---

[81] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[82] AR 60-93.

[83] AR 72.

[84] AR 72-73.

[85] AR 73.

[86] *Id*.

[87] AR 74.

that she would be looking for part-time work so she could pay child support and get her children back in her care.[88] Plaintiff said her children were 12, 10, and 7 and that she did not have custody or visitation with them because they were removed due to concerns regarding alcoholism and mental health.[89]  She said they were removed in October 2021 and prior to that had been in her care since they were born.[90] After children were removed from her home, she was removed from all benefits other than Medicaid.[91] Plaintiff said she had been sober for a year, since May 26, 2021.[92]

Plaintiff said that it took 3 months to complete rehab from marijuana and that she presently uses CBD oil for pain from sciatica that radiates into her leg and prevents her from moving around and taking care of her children.[93] She said she also used crystal meth but did not have a good reaction to it.[94] Plaintiff denied that she knew the marijuana she smoked was laced with meth and asserted that she

---

[88] *Id.*

[89] AR 74-75.

[90] AR 75.

[91] AR 75-76.

[92] AR 76.

[93] *Id.*

[94] *Id.*

went into the hospital for alcohol use, not use of meth.[95] Plaintiff said she had not

taken alcohol in eight months and that she had not taken any medication not

prescribed to her.[96]

Plaintiff said that she had not had epidural injections in her back in two to

three years.[97] When asked why she could not work fulltime, Plaintiff said

codependency issues and that she doesn't need to do anything.[98] She said that she

did not object to working part time as long as it did not interfere with her spine,

neck, and legs and that she did exercise and do physical therapy.[99]

Plaintiff said she has never been incarcerated and has never been in the

military.[100]

3.    The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence,

and limiting effects of the symptoms of her medically determinable physical

impairments not entirely consistent with the medical evidence and other evidence

---

[95] AR 76-77.

[96] AR 77-78.

[97] AR 78.

[98] *Id.*

[99] *Id.*

[100] AR 79.

in the record.[101]  The ALJ recited the medical record in detail, noting that Plaintiff had one spinal surgery in 2017, as well as a left discectomy at L5/S1 and a spinal fusion at L5/S1 in 2018.[102] The ALJ also noted that prior to the relevant period Plaintiff was prescribed a walker.[103] The ALJ noted that records in the early relevant period prior to July 2019 include positive objective signs, such as decreased range of motion and decreased strength with antalgic gait, but that "the subsequent record indicates overall improvement and recovery from the remote lumbar surgeries."[104] The ALJ noted that records from September 2019 through February 2020 indicated no deficit in strength, intact sensation, normal gait and station, and no apparent distress when sitting, and that Plaintiff's treating physician noted that imaging studies were reassuring.[105] The ALJ also noted that in August 2020 Plaintiff was seen in the emergency room because she had been riding on a hoverboard and fell off, but that she had normal strength, no neurologic deficits, and was discharged the same day in "good condition" after resolution of her pain.[106]

---

[101] AR 40-43.

[102] AR 41.

[103] *Id.*

[104] *Id.*

[105] AR 41-42.

[106] AR 42.

With regard to Plaintiff's issues with her spinal impairments, the ALJ

articulated her reasoning as follows:

> The undersigned finds the claimant's allegations about the intensity, persistence, and limiting effects of her physical symptoms generally inconsistent with the evidence. Again, the claimant alleges that the back impairment and related symptoms precludes all work activity and forces her to lie down and rest the majority of the day. As summarized above, the record confirms remote lumbar spine surgeries and recovery with relevant residual signs and symptoms. However, imaging from September 2019 was unremarkable and other records repeatedly document a normal unassisted gait, intact lower extremity sensation, and/or normal motor strength (See, e.g., Exhibits B13F/6, B19F/11, 19, 24, B22F/5, B23F/30, 49, 77, 83, 95). Follow up imaging in August 2020 was also normal and a contemporaneous physical examination did not reveal neurological deficits (Exhibit B18F/3-5).[107]

The ALJ went on to further articulate:

> Notably, on multiple occasions the claimant presented in no acute distress without objective signs of overt pain behavior (See, e.g., Exhibits 3F/5, 6F/13, 17, 8F/15, 10F/6, 14, 22F/5). As noted, the record references a remote walker prescription. She was also prescribed a cane in March 2019 (Exhibit B3F/4). However, the record does not confirm actual consistent use of any ambulatory assistive device during the adjudicatory period. And, as discussed, the record repeatedly shows a normal unassisted gait/ambulation. The undersigned also notes that the record references use of a caretaker at least as of June 2019 (Exhibit B5F). However, the evidence does not include documentation of the same, nor the need for, or actual use of a caretaker throughout the adjudicatory period. The undersigned also finds the generally sporadic lumbar spine symptomology and conservative treatment course since around mid-2019 inconsistent with the claimant's allegation that the impairment renders her disabled secondary to chronic pain and weakness. Again, the recent treatment records in evidence are

---

[107] AR 42.

generally void of evidence supporting the claimant's allegations (Exhibit 23F).[108]

The ALJ then went on to articulate that although Plaintiff's allegations were inconsistent with the record overall, the evidence did show some limitation which she consistent with the limitation to light work, which Dr. Golub opined to be appropriate.[109]

Plaintiff alleges that the ALJ cited to Dr. Golub, who cited to drug seeking behavior and cited to Exhibit 22F, page 5 and Exhibit 19F, page 6, and further alleged that Dr. Golub had not even reviewed Exhibit 22F, page 5.[110]  First, the Court again notes that Plaintiff's argument that Dr. Golub did not review the medical record entry at Exhibit 22F regarding Plaintiff's November 2021 treatment is erroneous.  Additionally, the ALJ did not cite to narcotic seeking behavior. The ALJ cited to Exhibit 22F, page 5 in stating that it was one of many times that Plaintiff presented in no distress and with no overt pain behavior, a normal unassisted gait, intact lower extremity sensation, and lower extremity strength.[111]

---

[108] AR 42-43.

[109] AR 43.

[110] ECF No. 9 at 18.

[111] AR 43.

The ALJ cited to Exhibit 19F, page 6 as a record that referenced PTSD and anxiety related symptoms.[112]

Plaintiff alleges that the ALJ did not specifically consider Plaintiff's testimony that she had sciatic pain radiating into her lower extremities; left sided pain radiating to her toes; pain and spasm in her low back when sitting, standing, and walking; and the need to lie down with her feet elevated.[113]  But the ALJ did consider each of those allegations.  The ALJ noted:

> Per hearing testimony, the claimant's core allegation is that a lumbar spine impairment precludes all work activity on a consistent and full-time basis.  She reported multiple lumbar spine surgeries before the subject Title XVI application date with continuing pain and functional limitations during the adjudicatory period.  She acknowledged that she is able to walk but described some weakness and explained that she cannot lift and carry twenty pounds.  She described chronic lower back pain and nerve pain that sometimes shoots down her left lower extremity.  She also reported back spasms.  She testified that these symptoms often force her to lie down on her right side or sit in a reclining chair.  She estimates spending 50% of a typical day laying down/resting in a recliner.  The claimant reported current treatment with muscle relaxers and gabapentin.  She explained that the medications result in drowsiness and that she falls asleep for about one hour after using the medications.  She also described use of heat and ice pads.  She also reported previous treatment with steroidal injections and physical therapy (Hearing Testimony).  The claimant described similar lower back pain and restricted exertional and postural abilities in her function report (Exhibit B8E).[114]

---

[112] AR 44.

[113] ECF NO. 9.

[114] AR 40.

The ALJ then went on to explain as noted above that while those allegations were supported during the time prior to the relevant period there was improvement noted in July 2019 and that by September 2019, those allegations were not consistent with the record.[115]

Plaintiff appears to argue that because the ALJ did not address each and every allegation separately and addressed her allegations as a whole, the ALJ erred. The Court disagrees. As noted above, the ALJ cited to records which indicate Plaintiff was able to sit without difficulty, was able to walk unassisted with a normal gait, had normal motor strength, had normal sensation, and displayed no overt signs of pain on examination.[116] Overall, the Court finds the ALJ's findings to be supported by the record as a whole.

The Court finds that the ALJ accurately recited the testimony and record and further concludes that the ALJ adequately explained her reasoning. The Court declines to remand as to this issue.

4.  <u>Summary</u>

It is the ALJ's responsibility to review and evaluate the conflicting evidence and Plaintiff's subjective complaints.[117] The ALJ meaningfully explained why she

---

[115] AR 40-43.

[116] Id.

[117] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

evaluated Plaintiff's subjective complaints as she did, and these reasons are supported by substantial evidence.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 10**, enter **JUDGMENT** in favor of **Defendant**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 13th day of March 2024.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge